IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAMA LYNN DUNCAN,

    Plaintiff,

v.                                                                                                   2:17-cv-00697-JB-LF

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
ON MOTION TO REVERSE AND REMAND FOR A REHEARING**

THIS MATTER comes before the Court on plaintiff Tama Lynn Duncan's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 18), which was fully briefed on April 17, 2018. *See* Docs. 22, 23, 24. Pursuant to 28 U.S.C. § 636, the Honorable James O. Browning referred this matter to me for a recommended disposition. Doc. 7. Having meticulously reviewed the entire record and being fully advised in the premises, I recommend that the Court GRANT Ms. Duncan's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Duncan was born in 1972, dropped out after the 10th grade, and worked for several years as a waitress, and for short periods as a housekeeper and a certified nursing assistant. AR 93, 110, 263–66, 277–79.[3] Ms. Duncan filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on December 3, 2009—alleging disability since August 6, 2009 due to joint, muscle, and bone pain, a stomach ulcer, and chronic diarrhea. AR 93–100, 110. The Social Security Administration ("SSA") denied her claims initially on February 25, 2010. AR 55–63. The SSA denied her claims on reconsideration on July 15, 2010.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 13-1 through 13-14 constitute the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

AR 66–72.  Ms. Duncan requested a hearing before an ALJ.  AR 73–74.[4]  On October 4, 2011, ALJ W. Thomas Bundy held a hearing.  AR 21–30.  ALJ Bundy issued his unfavorable decision on October 17, 2011.  AR 9–20.  Ms. Duncan requested review by the Appeals Council, which, on March 23, 2013, denied review.  AR 1–8.  Ms. Duncan first appealed to this Court on May 16, 2013.  *See Duncan v. Colvin,* 13cv459 WPL, Doc. 1 (D.N.M. May 16, 2013).  On January 26, 2015, United States Magistrate Judge William Lynch remanded this case to allow the ALJ to (1) conduct a proper credibility assessment of Ms. Duncan; (2) obtain and discuss factual information about the physical demands of Ms. Duncan's past relevant work; (3) order a consultative exam to assess whether Ms. Duncan had Guillain-Barre Syndrome.  *See* AR 407–27.

The Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ for further proceedings consistent with the Court's order.  AR 431.  The Appeals Council also ordered the ALJ to consolidate Ms. Duncan's subsequent claims for DIB and SSI—filed on May 13, 2013—with this case on remand.  *Id.*  ALJ Lillian Richter held a hearing on March 15, 2016.  AR 294–352.  After this hearing, the SSA sent Ms. Duncan for a consultative physical exam with Dr. Carlos Pastrana.  AR 1202–08.  ALJ Richter held a supplemental hearing on February 2, 2017.  AR 260–93.  The ALJ issued her unfavorable decision on March 8, 2017.  AR 223–59.

At step one, the ALJ found that Ms. Duncan had not engaged in substantial, gainful activity since August 9, 2009, her alleged onset date.  AR 228.  At step two, the ALJ found that Ms. Duncan suffered from the following severe impairments:

> obesity, degenerative changes in her right foot, mild hallux valgus deformity in the right foot, osteoarthritis in both feet, Baker's cyst/bursitis in the left knee, mild degenerative disc disease at L5/S1, diffuse musculoskeletal pain syndrome, sleep

---

[4] The ALJ found good cause to excuse Ms. Duncan's untimely request for a hearing.  AR 75.

disorder, mild degenerative disease in the right hand, fibromyalgia, mood
disorder, chronic headaches, and bilateral plantar fascial fibromatosis.

AR 229. At step three, the ALJ found that none of Ms. Duncan's impairments, alone or in combination, met or medically equaled a Listing. AR 229–32. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Duncan's RFC. AR 232–48. The ALJ found Ms. Duncan had the RFC to perform sedentary work,

> except that she can lift, carry, push and pull ten pounds occasionally and five pounds frequently; can stand/walk for two hours and sit for six hours in an eight-hour day. The claimant is limited to performing work that is primarily performed at the workstation. The claimant can occasionally climb ramps and stairs, can never climb ladders, ropes and scaffolding, can occasionally crouch, stoop, kneel, crawl, can never balance, and should avoid exposure to unprotected heights and moving mechanical parts. The claimant can frequently handle and finger, bilaterally. The claimant can occasionally reach overhead, bilaterally, and can frequently reach in all other directions. The claimant is limited to simple, routine, and repetitive work, can have frequent contact with supervisors and coworkers and occasional contact with members of the public. The claimant is limited to a workplace with few changes in the routine work setting and is limited to making simple work related decisions. The claimant is limited to work at reasoning levels 1 or 2.

AR 232.

At step four, the ALJ concluded that Ms. Duncan was unable to perform her past relevant work as an informal waitress,[5] a nurse assistant, or a hospital cleaner. AR 248. The ALJ found Ms. Duncan was not disabled at step five, concluding that she still could perform jobs that exist in significant numbers in the national economy—such as a stuffer, table worker, and addresser. AR 249–50. Because this Court previously remanded Ms. Duncan's case, she was not required to seek Appeals Council review again, and the ALJ's decision stands as the final decision of the

---

[5] According to the vocational expert, an informal waitress is one who works in an informal setting. AR 287.

Commissioner. *See* 20 C.F.R. § 404.984(a). Ms. Duncan timely appealed to this Court on July 5, 2017. Doc. 1.[6]

## IV. Ms. Duncan's Claims

Ms. Duncan raises three arguments for reversing and remanding this case: (1) the ALJ erred by impermissibly picking and choosing among the limitations found by administrative examining consultants Dr. Carlos Pastrana and Dr. Deborah Kos; (2) the ALJ erred by improperly rejecting the opinions of treating providers Dr. Robert Mayfield and Carol Morrel, PA-C; and (3) the ALJ's step five finding was not supported by substantial evidence. Doc. 18 at 14–25. Because I recommend remand based on the ALJ's error in picking and choosing among the moderate limitations found by administrative examining consultant Dr. Carlos Pastrana, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Analysis

Ms. Duncan argues that the ALJ impermissibly picked and chose among the moderate limitations found by Dr. Carlos Pastrana. Doc. 18 at 14–17. She argues that the ALJ's failure to explain why she adopted some of Dr. Pastrana's limitations while rejecting others requires remand. *Id*. The Commissioner argues that this was not error because the ALJ "assessed an RFC that was generally consistent with, if not more restrictive than, Dr. Pastrana's ultimate conclusions as to [Ms. Duncan's] functional abilities." Doc. 22 at 11. For the reasons outlined below, I agree with Ms. Duncan.

Although an ALJ need not discuss every piece of evidence, he or she is required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d

---

[6] If the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of the case, the ALJ's decision becomes final 61 days after it is issued. 20 C.F.R. §§ 404.984 (b)–(d); AR 224. The claimant then has 60 days to file an appeal to this Court. 20 C.F.R. § 404.981.

6

1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[7] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In *Haga*, the Tenth Circuit held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE's") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC

---

[7] SSR 96-5p was rescinded effective March 27, 2017, after this claim was adjudicated. *See* Federal Register Notice Vol. 82, No. 57, page 15263.

7

assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.*

Dr. Carlos Pastrana conducted a consultative exam of Ms. Duncan on June 18, 2016. AR 1202–08. Following this exam, he completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). AR 1196–1201. Dr. Pastrana opined that Ms. Duncan had the following limitations:

- Able to lift up to 10 pounds occasionally;
- Able to lift up to 20 pounds occasionally;
- Able to carry up to 10 pounds occasionally;
- Able to carry up to 20 pounds occasionally;
- Able to sit a maximum of one hour at a time;
- Able to stand a maximum of one hour at a time;
- Able to walk a maximum of one hour at a time;
- Able to sit for three hours total in an eight-hour workday;
- Able to stand for three hours total in an eight-hour workday;
- Able to walk for three hours total in an eight-hour workday;
- Able to reach overhead occasionally;
- Able to reach in all other directions occasionally;
- Able to handle occasionally;
- Able to finger occasionally;
- Able to push and pull with hands occasionally;
- Able to operate foot controls occasionally;
- Able to climb stairs and ramps occasionally;
- Never able to climb ladders or scaffolds;
- Able to balance frequently;
- Able to stoop occasionally;
- Able to kneel occasionally;
- Never able to crouch;
- Never able to crawl;
- Never able to work in unprotected heights;
- Occasionally able to work around moving mechanical parts;
- Never able to operate a motor vehicle;
- Never able to work with vibrations.

AR 1196–1200.

The ALJ gave Dr. Pastrana's opinion "significant weight" because "his opinion is based upon the objective testing and observations he made during the course of the examination and is consistent with the medical evidence of record." AR 242. The ALJ adopted several of the moderate limitations in Dr. Pastrana's opinion. The ALJ, like Dr. Pastrana, limited Ms. Duncan to occasional overhead reaching, occasional climbing of ramps and stairs, occasional stooping and kneeling, never climbing ladders, ropes or scaffolds, and never being exposed to unprotected heights. AR 232. Problematically, however, the ALJ omitted other limitations without discussion or explanation. First, while Dr. Pastrana opined that Ms. Duncan could only occasionally reach (in all directions other than overhead), the ALJ found she could frequently reach in all directions (other than overhead). AR 232, 1198. Second, while Dr. Pastrana opined that Ms. Duncan could occasionally handle and finger with both hands, the ALJ found that she could frequently handle and finger with both hands. *Id*. Third, while Dr. Pastrana opined that Ms. Duncan could never crouch or crawl, the ALJ found that she could occasionally crouch and crawl. *Id*. Fourth, while Dr. Pastrana opined that Ms. Duncan could only occasionally operate foot controls, and never operate a motor vehicle, the ALJ omitted these limitations from Ms. Duncan's RFC without providing any explanation. AR 1198, 1200. Although the ALJ's RFC header contains a detailed list of limitations, the ALJ's RFC discussion fails to adequately anchor the RFC conclusions to the evidence. There is absolutely no discussion in the ALJ's decision as to why she concluded that Ms. Duncan could frequently reach in all directions (other than overhead), or why she could frequently handle and finger with both hands, or why she could occasionally crouch and crawl. *See* AR 232–48.

Ms. Duncan focuses specifically on the ALJ's failure to address the limitations Dr. Pastrana found in her abilities to sit, stand, and walk. *See* Doc. 18 at 16. Dr. Pastrana found that

9

Ms. Duncan could only sit, stand, or walk for one hour at a time "without interruption," noting that "[s]taying in one position for too long will increase the pains." AR 1197. Dr. Pastrana also opined that Ms. Duncan could only sit, stand, or walk for a maximum of three hours each in an eight-hour workday. *Id*. In the RFC, the ALJ did not adopt these limitations—instead finding that Ms. Duncan can "stand/walk for two hours and sit for six hours in an eight-hour day." AR 232. The ALJ did not explain why she did not adopt Dr. Pastrana's limitations regarding Ms. Duncan's abilities to sit, stand, and walk. This error requires remand. *See Haga*, 482 F.3d at 1208 (finding error in ALJ's adoption of some moderate limitations while rejecting others without explanation).

The Commissioner argues that the ALJ assessed an RFC that was "generally consistent with, if not more restrictive than" Dr. Pastrana's opined limitations. Doc. 22 at 11. This argument fails. As discussed above, the ALJ's RFC was less restrictive than Dr. Pastrana's opinion concerning Ms. Duncan's abilities to reach in all directions (other than overhead), to handle and finger with both hands, and to crouch and crawl. The ALJ's RFC is also less restrictive than Dr. Pastrana's opinion with respect to Ms. Duncan's abilities to sit, stand, and walk. The ALJ did not limit Ms. Duncan to sitting, standing, or walking for only one hour at a time as Dr. Pastrana opined. The ALJ did not limit Ms. Duncan to sitting for no more than three hours in an eight-hour workday as Dr. Pastrana opined. Instead, the ALJ found that Ms. Duncan could stand/walk for two hours and sit for six hours total an eight-hour workday. AR 232.

The Commissioner argues that Dr. Pastrana opined that Ms. Duncan "could stand and/or walk for six hours total in an eight-hour workday," and that the ALJ limited Ms. Duncan to sedentary work, "which only requires the ability to stand/walk for two hours." Doc. 22 at 11. However, Dr. Pastrana did not opine that Ms. Duncan could "stand and/or walk for six hours."

Instead, he opined that she could walk a maximum of three hours in an eight-hour day, and stand a maximum of three hours in an eight-hour workday. More importantly, Dr. Pastrana opined that Ms. Duncan could walk no more than one hour at a time, and stand no more than one hour at a time. The ALJ's RFC does not address this limitation at all, and the ALJ failed to explain why she did not adopt it.

The Commissioner acknowledges that the ALJ's RFC finding that Ms. Duncan can sit for up to six hours in an eight-hour day is in conflict with Dr. Pastrana's finding that Ms. Duncan can sit for a maximum of three hours a day. Doc. 22 at 11. The Commissioner, however, argues that the ALJ explained elsewhere in her decision why she found Ms. Duncan less limited in her ability to sit. *Id*. I disagree. First, the Commissioner claims that the ALJ relied on Ms. Duncan's "own statement that she could sit for a total of six hours." *Id*. (citing AR 205, 242). Ms. Duncan made this statement about her ability to sit at her February 13, 2010 consultative exam with Dr. Pastrana—more than six years before Dr. Pastrana issued the opinion on which the ALJ was relying. *See* AR 205, 241–42, 1195–1208. Further, as the ALJ recognized, Ms. Duncan made this statement before she was diagnosed with fibromyalgia. *See* AR 243. More importantly, there is no indication that the ALJ relied on this statement in assessing Ms. Duncan's ability to sit. Instead, the ALJ referred to this statement in her discussion of why she gave non-examining state agency physician Dr. Elva Montoya's opinion "little weight." AR 242. It is not enough for the Commissioner to "suppl[y] some reasons that it believes would support the ALJ's RFC finding" if the "ALJ did not provide these explanations" herself. *Haga*, 482 F.3d at 1207. "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Id.* at 1207–08 (citations omitted).

Second, the Commissioner claims that the ALJ relied on the opinions of non-examining state agency physicians Dr. Mary Rees and Dr. Craig Billinghurst, who both opined that Ms. Duncan would be able to sit for more than six hours in an eight hour workday. Doc. 22 at 11 (citing AR 242–43, 382–83, 400). I disagree. The ALJ gave "some weight" to both Dr. Rees's and Dr. Billinghurst's opinions. AR 243–44. However, there is no indication that she adopted their opined limitations on standing, sitting, or walking. The ALJ stated that Dr. Rees "determined that [Ms. Duncan] could occasionally lift and/or carry twenty pounds and ten pounds frequently and she could stand and/or walk for **more than** six hours on a sustained basis in an eight-hour workday and sit for more than six hours on a sustained basis in an eight-hour workday." AR 243 (citing AR 382–83 (emphasis added)). The ALJ adopted none of these limitations, instead finding that Ms. Duncan could lift and/or carry ten pounds occasionally and five pounds frequently, and could stand/walk for two hours and sit for six hours in an eight hour day. AR 232. The ALJ also summarized Dr. Rees's findings that Ms. Duncan could "frequently climb ramps and stairs and occasionally climb ropes, ladders, or scaffolds, and she could frequently stoop, kneel, crouch and crawl and she had no manipulative, visual, communicative, or environmental limitations." AR 243, AR 382–83. The ALJ did not adopt any of these limitations either, instead finding that Ms. Duncan could only occasionally climb ramps and stairs; never climb ropes, ladders, or scaffolds; and occasionally stoop, kneel, crouch and crawl. AR 232. The ALJ explained why she gave "some weight" to Dr. Rees's opinion as follows: "Although the doctor never had the opportunity to examine, or even meet with and question, the claimant, the doctor determined that the claimant could work at the light exertional level, which exceeds the functional capacity determined in this decision, [and] the doctor's findings determined that the claimant was 'not disabled', therefore I give some weight to the opinion of

Dr. Rees." AR 244. Thus, the ALJ appears to have given weight only to Dr. Rees's conclusion that Ms. Duncan was not disabled. The ALJ did not rely on Dr. Rees's finding that Ms. Duncan could sit for more than six hours in an eight hour day. The Commissioner's assertion that she did constitutes an impermissible post hoc rationalization.

Similarly, the Commissioner's argument that the ALJ relied on Dr. Billinghurst's opinion also fails. The ALJ referred to Dr. Billinghurst's opinion that Ms. Duncan "could occasionally lift and/or carry twenty pounds and ten pounds frequently and she could stand and/or walk for more than six hours on a sustained basis in an eight-hour workday and sit for more than six hours on a sustained basis in an eight-hour workday." AR 244 (citing AR 398). "The doctor further determined that [Ms. Duncan] could frequently climb ramps and stairs and occasionally climb ropes, ladders or scaffolds, and she could frequently stoop, kneel, crouch and crawl and she had no manipulative, visual, communicative or environmental limitations." AR 244 (citing AR 399). As was true with Dr. Rees's findings, the ALJ adopted none of these limitations. The ALJ's explanation as to why she gave "some weight" to Dr. Billinghurst's opinion was identical to her explanation as to why she gave "some weight" to Dr. Rees's opinion: "Although the doctor never had the opportunity to examine, or even meet with and question, the claimant, the doctor determined that the claimant could work at the light exertional level, which exceeds the residual functional capacity determined in this decision, [and] the doctor's findings determined that the claimant was 'not disabled', therefore I give some weight to the opinion of Dr. [Billinghurst].[8]" AR 244. Thus, the ALJ appears to have given weight only to Dr. Billinghurst's conclusion that Ms. Duncan was not disabled. The ALJ did not rely on Dr. Billinghurst's finding that Ms.

---

[8] Indeed, the ALJ obviously copied this explanation from her earlier paragraph relating to Dr. Rees, as she mistakenly used Dr. Rees's name when she obviously was referring to Dr. Billinghurst. *See* AR 244.

Duncan could sit for more than six hours in an eight hour day.  The Commissioner's assertion that she did constitutes an impermissible post hoc rationalization.

Finally, the Commissioner's argument that Ms. Duncan failed to show that the error was harmful is without merit.  Had the ALJ adopted the restrictions in Dr. Pastrana's opinion, Ms. Duncan would have been precluded from working.  *See* AR 291–92 (VE testified there would be no jobs available if Dr. Pastrana's limitations were adopted).  The Commissioner's argument that this case is like *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished), Doc. 22 at 12, also is without merit.  Unlike *Endriss*, in this case there is no "sufficiently specific" discussion about the limitations in Dr. Pastrana's opinion elsewhere in the decision.  *Endriss*, 506 F. App'x at 777.

Instead, it is simply unclear where many of the limitations in the RFC come from.  According to SSR 96-8p, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996).  The ALJ also must explain "how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*  The ALJ did not adequately tie the RFC conclusions to the evidence of record.  With regard to Dr. Pastrana's opinion, "the ALJ did not state that any evidence conflicted with [the CE's] opinion or . . . RFC assessment.  So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Haga,* 482 F.3d at 1208.  Therefore, as in *Haga*, I recommend that the Court remand "so that the ALJ can explain the evidentiary support for [her] RFC determination."  *Id*.

## VI. Conclusion

The ALJ erred in picking and choosing among the moderate limitations in Dr. Pastrana's opinion without explaining why she adopted some limitations and not others. The Court recommends remand so that the ALJ can explain the evidentiary support for her RFC determination. The Court does not reach Ms. Duncan's other claimed errors, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

I recommend that the Court GRANT Ms. Duncan's Motion to Reverse and Remand (Doc. 18).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge